Scribner, J.
This case conies into this court by way of appeal from a judgment rendered therein by the court of common pleas. While the case was pending in that court, and before the trial was bad, on motion of the plaintiff, certain matters contained in the answer of the defendants was stricken from the answer. The defendants now come in and submit a motion that the matter so expunged or stricken from the answer, be restored. It is that motion which has been heard, and which we shall now proceed to determine.
The proceeding is brought by the plaintiff Sanfleet, as the owner of property abutting upon that part of Summit street, which lies between Adams street and Perry street. He alleges that the defendants, the Electric Street Railway Co. and persons who are parties defendant in the interest of that company, are about to construct and operate a line of elec *462 trie railway over certain streets in tlie city, and over that part of Summit street lying between Adams street and Perry street. He says, among other things, that the railway company and those acting in its behalf have not obtained the requisite consents of a- majority of the property owners abutting upon that portion of the street, to the construction and operation of this proposed line of railway, which is essential, it is claimed under the statute.
The defendants answer, and show that the Toledo Electric Street Railway Co. is the only substantial party in interest; the franchise which had been granted to the parties named —Robison .‘and others — having been transferred to that company, it became an incorporated company. It admits that the railway company is about to erect, construct, and operate, its line of street railway, according to the authority-vested in it under the ordinance which is set out in the pleadings in the case. It denies that it has not obtained the necessary consents of the majority of property owners owning property upon the abutting portions of the street, and avers that it had obtained those consents, It denies, however, in that part of the answer which has been stricken out, that these, cousents are necessary; setting forth that a line of street railroad for many' years has been in operation along the portions of Summit street mentioned, now owned and controlled by the Consolidated Street Railroad Co. It says that it does not propose to construct any new line of railway, or lay down any new track; but simply to run its cars upon the tracks already existing there, under the control of Ihe Consolidated Street Railway Co.
One point of contention arises upon the proper construction of the ordinance. It is insisted upon the part of the Electric Street Railway Company that the ordinance does not in fact confer power or authority upon this Electric Street Railway Company to construct a line of railway upon the part of Summit street lying between-Adams street and Perry street. *463 but simply confers power to operate over a line of railroad already existing and owned by the Consolidated Street Railway Company.
The ordinance in question was passed by the city council of Toledo on the 27th of March, 1889, and approved April 5, 1889, and it recites that—
“Whereas, David Robison, Jr., trustee, of Toledo, Ohio, has made application in writing to the common council of the city of Toledo for leave to construct and operate an electric street railroad on and along the hereinafter named streets of said city, and public notice of such application has been given by the clerk of said city in the ‘Toledo Daily Commercial, ' a daily paper published in said corporation, for a period of three consecutive weeks, as required by law; and
“Whereas, the said David Robison, Jr., trustee, proposed and agreed to carry passengers upon said proposed railroad at the lowest rate of fares, and has peviously obtained the written consent of a majority of the property holders upon each of said streets, or parts thereof, on the line of said proposed railroad, represented by the feet front of the property abutting on said several streets along which said railroad is proposed to be constructed; now, therefore,
“Sec. 1. Be it ordained by the common council of the city of Toledo, that the said David Robison, Jr., trustee, his successors or assigns, is hereby granted permission to construct, maintain and operate an electric street railroad with the necessary switches, turn-outs, turn-tables, appliances, equipment, etc., to operate the same upon and along the following streets, and parts of streets, in the city of Toledo, viz:
‘ ‘ Commencing at the city corporation line” — omitting now the description of the streets and parts of streets along which authority is granted to construct this line of railway, we come to this portion- — -“thence along Broadway to Ottawa street; thence along Ottawa street and over the Perry street bridge to Summit street; thence along-Summit street to Adams street; thence along Adams street to Huron street,” etc.
And further on: “Said street railroad shall be a single track road on all of said streets and parts of streets, except on the following, to-wit:
*464 “Commencing at the hew Sumner street bridge; thence along Railroad avenue and Wade street to Morris street; along Mbrris street from the Lake Shore and Michigan Southern Railroad property to Broadway; thence along Broadway to Ottawa street; thence along Ottawa street and over the • Perry street bridge to Summit street; thence along Summit street to Adams street; thence along Adams street.to Michigan street; thence along Michigan street to Canton avenue; thence along Canton avenue to Woodruff avenue; also, on Monroe street from Ontario street to Summit street. On all of said last above mentioned streets, and parts of streets, said road shall be a double track road. Said road shall be constructed, maintained and operated on all of said streets as a standard gauge road. ’'
By this provision it, will be seen that along the streets here named — which includes that part of Summit street extending from the Perry street bridge to Adams street — authority is granted, or purports to be granted, not only to construct a double track road, but the ordinance provides that upon the portions of the streets herein .named the road shall be á double track.
Section 2- -and it is upon this second section that stress is laid in the argument in support of this motion-—
“Authority is hereby granted to David Robison, Jr., trusee, his successors or assigns, to occupy, according to law and ordinance, so much of existing street railroad tracks upon the above named streets as is necessary for the successful operation of said electric railroad therein.
It is claimed on behalf of the Electric Street Railroad Company that where it is proposed to simply operate a line of railroad already constructed and existing- — in other words, where it is proposed by a railroad company to which a franchise is granted to run its cars upon the line of railroad of an existing street railroad company, that the consent of abutting property owners — the owners of the property^ abutting upon that part of the line of railroad so proposed to be operated — is not necessary. But that under the terms of the stat- *465 rite it is-only necessary to procure these consents where fit is proposed to construct as well as operate a line of street railway-; and it is argued here that, taking the language of these sections — reading them together and construing them together — that no power is granted to Robison, or his assigns, the Toledo Electric Street Railway Company, to construct a line of railroad along the streets already occupied by the railroad tracks of any other company; that there is authority granted to use those tracks, but no authority is granted, it is claimed, to construct a new line of railroad along these streets. And counsel for defendants argued as they present their views here, that if there is no authority granted by this ordinance to construct a line of railroad on Summit street between Adams street and Perry street, it is not necessary to obtain the consent of a majority of the abutting property owners to operate existing street railways — in other words, to run their cars over the tracks of existing street railroad companies; and the plaintiff utterly fails to make a case here, so far as it proceeds upon the ground that the consents of the abutting property owners have not been obtained.
Now, it is stated that there are already two railroad tracks constructed and in operation upon this part of Summit street referred to; that it is a sheer impossibility for the Electric Street Railway Company to construct a line of double tracks along the same streets, and that therefore the ordinance, construed in the light of these facts, is to be understood not as conferring the power to construct a new line of railway along this part of Summit street, but simply to operate an existing line.
It will be noticed, however, that there is no limitation of that kind in this ordinance; the power is broad and unqualified to construct a line of railroad along the line of all of these streets. It gives to the Electric Street Railway Company, or attempts to give to it, the option to use existing street railroad tracks along any of the streets enumerated in *466 this ordinance. It does not specify that they shall use existing tracks anywhere in the city, non constat, that because two tracks are already in Summit street,it may not be practical to lay down and operate two additional lines of railroad independent of the tracks already provided. In the event, that the Consolidated Street Railroad Company shall abandon their franchise along that part of Summit street or along any other portion of the route mentioned in this ordinance, we think it is perfectly clear that by the terms of the ordinance the Electric Street Railway Company may lay down its tracks and operate its line of railroad along Summit street or along any other street within the proposed route that may be necessary for the operation of their line. Upon the argument presented herein support of this motion by counsel for defendant — that there is no power granted by the broad and comprehensive terms of this ordinance to construct a new line along Summit street — the very moment that the Consolidated Company should surrender its franchise, should abandon its track and cease to do business along there, or tear up its track,for example, as they might do, the Electric Street Railroad Company would have no power under the terms of the ordinance to construct and operate a line of railroad along that part of Summit street; because it is plain, if the argument is correct, that if there is no power granted by the terms of this ordinance to the Electric Street Ry. Co. to construct a line of railroad along that part of Summit street, the very moment that the existing line of railroad is removed, that moment they would have to again repair to the city council for authority to construct a line of railway there. But there is no limitation. The power is as broad and comprehensive as language can make it, conferring upon the defendants the power and franchise to construct and operate a line of railroad along all of these streets; giving them in the second section the authority to occupy “according to law and ordinance so much of existing street railroad tracks upon *467 the above named streets as is necessary for the successful operation of said electric railroad therein.”' The power is given, and the authority is giveti, but it is not made compulsory upon ‘them to act under that grant. The power is conferred upon them clearly and undisputably, in the language of that section, to construct an independent line of railroad along all of these streets. If they should attempt to construct a line of railroad on the streets already occupied, a question of law arises, so far as the public is concerned, as to whether the authority is properly granted; but, so far as the ordinance is concerned, it properly grants the right and authority to construct and operate that line of railroad.
Now, then, we think it is clear, in this view of the ordinance, assuming it to convey the power to construct as well as to operate, that the consents required by the statute are essential, and that the council had no power to grant this authority under existing statutes — the statutes in force at the time this ordinance was passed — had no power to grant authority to construct, until the requisite consents were obtained. And it would follow from this view of the case, that even if the Electric Street Railroad Co., (as it says in its answer), simply intends not to construct, but to operate the existing line of railroad, they nevertheless would undertake to do that under an ordinance which was passed without the requisite statutory authority; that is to say, the authority being granted to construct.or to operate, at the option of the railroad company, the council have undertaken to do that, in so far as they undertook to authorize the construction of the railway, which they had no power under the statute to do It would make no, difference whatever that the Electric Street Railway Co. undertook to. operate the line of railroad and not to construct it, if in the ordinance under which they undertook to do that, the council had exceeded its authority.
Then again as to whether or not, if the city council had limited this grant as to this portion of Summit street to the *468 right — not to construct but simply, to, operate the existing line of railroad, the Electric Company could run its cars along the tracks of the Consolidated Railway Co. between those points, there being no power to construct in the sense ■that the Electric Company was authorized to construct .an entirely new line of railway — is a very, difficult and important question; and it might be more difficult, in case that the defendant company simply proposed to run horse; cars upon this line of railway without being required to provide any new construction, but simply proposed to ,propel their cars by horse power, and by some turmout, run upon the tracks of the Consolidated Company, and take its. cars .over the line of the Consolidated Company, without any new appliances. But here is the further grant, in this.o.dinance. and indeed the requirement is, in sec, 4:
“The cars of said street railroad shall be propelled and lighted by electric power, and shall be properly heated in cold weather; and for these purposes the said David Robison. Jr., trustee, his successors or assigns, are authorized to construct, operate, and maintain along the line of said street railroad such necessary structures, appliances, and equipment as may be necessary to successfully operate the same. ’'
Now, it appears plainly in this case that the; defendant company, in order to avail itself of this grant — -in order to move its cars upon the line of the Consolidated Street Railway — must do something more: they must provide appliances. Of course, it is well understood, and it is a matter of common knowledge, what is necessary to be done. Going outside of the record, the court may say that we have seen tracks of the Consolidated Company taken up, wires carried along beneath those tracks, and the tracks re-laid for that purpose. There are poles and structures for what are known as trolley wires — -methods adopted for conducting the motive power to the mechanism of the cars, by which they are propelled. All these things are required' and are neces *469 sary to be done, in order that the defendant company may avail itself of the privileges granted by this ordinance. - And it appears-to us that insofar as it is. necessary to'.make these changes, and provide these new structures in order to operate under the grant here made, there is a construction of a ..newline of railway in the sense contemplated by the statute, and that it requires .the'consent of the abutting property owners. That is to say, when the abutting property owners consent that railroad cars may be moved along in front of their property by horses as a motive power, they do not consent that another railroad company may resort to electricity as .a motor, and may provide necessary'appliances for making that motive power available. 1 •
We think, therefore, that the motion to restore the- matter stricken out by the court of common pleas, which' proceeds substantially upon the assumption that it is not necessary that the consent of the abutting property owners should be obtained, must be overruled, and the order is- made accordingly.
Mr, Brumback — The court will note an exception.
The Court — It is to be understood, in disposing of this motion, that what has been said, of course, refers only to the dispute between the property owners and the defendants in the case.
Bentley, J.
(on final hearing.]
This action comes into this court by appeal from the court of common pleas. The plaintiif, Sanfleet, is an owner of real property abutting on Summit street in the city of Toledo, Ohio (a city of the first class of the third grade), and on July 5, 1889, brought the action to enjoin the city from permitting, and the other defendant from attempting, the exercise .of the rights and franchises for the construction and operation of an electric street railway on said Summit street, claimed to have .been granted to the defendant, Robison, *470 trustee, his successors and assigns, by an ordinance of said city passed March 27, 1889. It is alleged that said Robison acted in said matter for himself and the other individual defendants, and that beforo the commencement of this action, he had, or the defendants claimed that he had, assigned his interest as trustee to the defendant, The Toledo Electric Street Railway Company, a corporation organized in this state to receive and exercise said franchise and other powers, and which threatens and is about to exercise the rights alleged to be granted by said ordinance, and to construct the necessary appliances and operate cars by electricity on said part of said street over the existing street railway tracks therein.
Plaintiff alleges further, that the consents of owners of property abutting on that part of Summit street to be traversed, which are, by the statute, made a pre-requisite to the granting of such a franchise, were not obtained nor produced to the council prior to the passage of said ordinance, or at any time, indeed, up to the filing of the petition, and that the plaintiff had not given such consent.
The petition further alleges that “either of the defendants, nor any individual or individuals or corporation, has ever obtained or procured the right to construct, maintain or operate the proposed street railroad in said pretended ordinance described, or any part thereof, over and along any existing street railway tracks upon said part of said Summit street, and that none of the defendants has commenced any proceeding to obtain such right, and that Summit street being eighty feet wide, the taking of the existing tracks for the purpose named is not necessary.”
The petition also sets forth the existence) of various electric systems in the city, jsuch as telephone, fire-alarm, telegraph and electric light systems, which are useful and convenient in connection with the plaintiffs said property and serve to afford protection to it in case of fire, and enhance the value of its use and its rental value, and which systems *471 would be interfered with and some of them rendered hurtful and dangerous to said property by the defendant’s threatened constructions and the operation of said electric cars.
The petition also alleges that the said proposed electric railway is to be supplied with electric power along naked and uninsulated wires, and would be more dangerous, annoying, hurtful and injurious to the plaintiff’s property than would a street railway operated by steam power, and that the proposed use of the street would impose upon it and the plaintiff’s rights therein as the owner of said property an additional burden not heretofore contemplated in any dedication of it for public purposes, and injure the special interest of the plaintiff therein.
Issue was tendered by answer as to the allegations regarding the failure to obtain said necessary consents of the abutting property owners, and also to the allegations noted above. After the appeal of the case to this court, certain supplemental pleadings were filed which will be noticed hereafter.
As we understand, the plaintiff does not now press his claim for an injunction upon said allegations regarding injuries to his property from the interference with said other electric systems, nor upon those regarding additional burdens upon the street, this court having heretofore, in other cases, disposed of similar claims, and adjudged them invalid for the purposes of an injunction.
See opinion in the case of Mary E. Simmons v. The City of Toledo et al., 5 Ohio Cir. Ct. Rep. 124. And, as bear ing upon this, also, see case of Railway Co. v. Telegraph Association, 48 Ohio St. 392, especially page 433. Also Railroad Company v. Village of Bell Centre, 48 Ohio St, 273.
As to the claim of a want of necessity and want of power to use the existing street railway tracks, we are unable to see how the plaintiff is interested so as to raise the question. As to the necessity, it was for the city to judge, and if the *472 required: consents were obtained, and if'the council had granted permission to use the- tracks of an'existing- .street railway,, the effect .or unlawfulness of such permission would' be a question between the two street railway companies. (See last paragraph of opinion in Sims v. St. Ry. Co., 37 Ohio St. 556, 571.)
First, as to consents: We find-that the requisite number of consents had not been obtained prior to. the passage of said ordinance.of March 27, 1889,- and that-the same is invalid as to the plaintiff, and a decree in his favor must be entered unless the matters set up in the supplemental answer filed in this court March 30, 1891, require a different judgment. • .
The supplemental answer alleges that on July 28,-1890, thfe common council duly passed an ordinance which was duly approved by the mayor and accepted by tlio Toledo Electric Kailway Company, granting to it the - right to extend its street- railway over and along the part of Summit street in-question, and providing that it should .use the existing street railway tracks, and granting it permission to do so on making proper compensation to the owner of said tracks.
And said supplemental answer also alleges that on December 4,- .1890, said common council passed another ordinance; of the same import, which was also approved by the mayor and accepted by said defendant company, and that before, the passage of said ordinances respectively said defendant company made application therefor, and produced to said council the' written consents therefor of the owners of more than óne-half of said abutting lots and lands.
The validity of these ordinances is challenged by tin* plaintiff on several grounds:
1. That no written application for said franchise had been, made.
2. That sufficient consents were not obtained therefor, unless the old consents, used as a basis for the said ordinance *473 of 1889, were counted, and that this could not be ■ lawfully done.
3. That when consents are produced to the council and made the basis of such an ordinance, they become a part of the proceedings of the council, and what they are should be shown by its records other than by recitals in the ordinance itself; and that no such record exists, and that the consents were not in fact lawfully produced to or considered by the council.
4. That at the time of the passage of the ordinances the •said railroad of the defendant company actually constructed, operated and run over was less than eight times the length of that part of the existing tracks required to be used, and that the defendant had not been lawfully authorized to construct even so much as it had in use.
5. That'the defendant company could not lawfully be permitted to fill the gap in its originally proposed line under the guise of an extension of its road, but that it must proceed as for a new and independent route, which would involve advertising for bids, etc., and that such franchise could not be granted to it otherwise, nor to any person or corporation, but such as would agree to carry passengers at the lowest rates of fare.
O. That as to said ordinance of December 4, 1890, it was not legally adopted.
7. That at all events the rights of the parties must be determined upon the facts as they existed upon the filing of the original petition, and the plaintiff cannot be defeated if originally in the right, by these pod litem motam proceedings.
As to these objections, we hold:
1. That if an application for the passage of the ordinance were required — which we doubt — it was sufficient for the defendant- to present the ordinance itself to the council, through *474 its proper committee, and that a sufficient application was presented.
2. That the said original consents, so far as they were themselves valid, could be connected with others obtained later for the ordinance of .1890.
8. That it is not necessary, to sustain the validity of the ordinance, that the consents upon which it was based should be entered on the records of the council, nor that the fact of their production should be shown by the records otherwise than is done by the records in this case, and we find that the consents were produced to the council in such mannnor as to fulfill the requirements of the law.
4. That plaintiff, as a lot owner, is not interested in the enforcement of the provisions of sec. 3438 of the Revised Statutes, regarding the length of the road in actual operation which must exist in order to justify the use of a part of the existing tracks of another railway company.
5. We are unable to agree with plaintiff’s counsel, that, in order to fill this gap in its route on Summit street the defendant company must proceed as for a new railway enterprise. It is to be remembered that as to the city, and every person other than the plaintiff, so far as we can know in this action, the franchise of the defendant company extends along Summit street and is a proper part of its continuous route; and concurrent and commensurate with this right of the defendant company are the obligations and duties assumed by the defendant company when it bid to carry passengers and accepted the provisions of the original ordinance. As to every one but the plaintiff certainly it was bound to observe the conditions of the ordinance of 1889, and it would be a singular state of affairs, if, supposing this gap were to be filled by proceedings de novo — as for a new enterprise — the defendant company should be awarded the franchise upon its bid being lower then its competitors, though entirely different from and possibly higher than its bid for the franchise of 1889. the route of which covered this identical ground. *475 It occurs 'to us that when the only basis of objection whi%b. the plaintiff may postulate, viz: the lack of- requisite' con-sents, is removed by obtaining the necessa'ry number and .amount, and the council having found that the'requisite con--sents had been obtained, passes an ordinance again permitting the defendant to exercise its franchise oí'e'r' chis part of the route, such action leaves the original objection of theplaintiff without vitality; and the grant is valid, as to him.f •whether it be treated as a technical extension provided for by the statute (which as to him it might well be considered),- ■or not. It is an act requisite to bring into harmony the’ rights of the city and its other citizens as against the defehd-ant company through its original obligations under an ordinance valid as to them, and the rights of the plaintiff as to whom the original grant is invalid.
6. It is probably strictly unnecessary to the disposition of this case for us to pass upon the validity of this ordinance of December 4, 1890, since, if valid, it is, as to this part of Summit street, a mere reiteration of the ordinance of July 28, 1890; but, as this latter 'ordinance embraces part of the other streets, and the question of its validity has been fully argued on both sides and is technically in the case, we have considered the objections peculiar to it.
Sections I to 6 inclusive provide for the extension of the tracks of the defendant company on several parts of streets also embraced in the original route described in said ordiannce of 1889, and requiring the defendant company to use the existing street railway tracks therein.
Then followed sections 7 and 8 as the ordinance was passed by the board of councilman and by the board of aldermen. These contain general provisions, applying to any company, and read as follows:
“Sec. 7. Whenever any company, which is authorized to construct and operate, and has constructed, and is operating a street railway, shall have occasion, or deem it nec *476 essary to use and . occupy any portion of the tracks of any existing street railway company in the city of Toledo, such company shall have the right to occupy and use said portion of said existing tracks to the extent permitted by the laws of the state of Ohio, upon payment to the company owning the existing tracks of such sum as annual rental as may be agreed upon between such companies, and in case of failure or inability to make such agreement, then such sum shall be fixed by the common council of the city of Toledo. ’'
Section 8 is similar in its provisions, except that it applies, instead of to the tracks, to the wires,, poles and motive power of the existing street railway company, and provides that they may be used upon payment of such sum as annual rental for the wires and poles and as compensation for the motive power as may be agreed upon between the said companies, and in case of the inability or failure of the companies to agree within twenty days from the application of the one company to the other to enter upon negotiations for such agreement, then such sum shall be fixed by the common council of the city of Toledo.
The ordinance originated in the board of councilmen, and, having passed that board, was afterwards passed by the board of aldermen and submitted to the mayor for his approval. Within the time prescribed by the statute, he returned it to the board of councilmen with his approval, except as to said sections seven and eight, of which he disapproved, for reasons by him submitted in writing, and returned the ordinance. Thereupon a vote was taken in the board of councilmen whether the ordinance should pass notwithstanding the veto of said sections seven and eight, and the vote upon that motion was less than that required to pass the measure over the veto of the payor. The record thereupon recites that the mayor’s veto was sustained. The matter was not further submitted to or considered by the board of aldermen.
It is claimed by counsel for the plaintiff that this leaves the entire ordinance inoperative, for the reason that while *477 the mayor might separately veto an item in an appropriating ordinance, or the like, he had no power to veto such'a portion of such an ordinance as this without affecting the other portions thereof, and that his action was therefore, in legal effect, a veto of the entire ordinance, and that in order to its validity with the said sections seven and eight expunged, action must be taken by each board thereon, and that otherwise it would result that municipal legislation would be' effective without the concurrence of both boards and the' mayor.
This matter must be resolved by a construction of the statute bearing upon it. We suppose that the legislature would have the power, and without violating any provision of the constitution, to provide that municipal legislation might be adopted by agencies other than a council. State ex rel. -v. Hawkins, 44 Ohio St., beginning on page 98, and especially at p. 110, as to this. It has frequently granted such power to boards having a membership narrow in numbers, and possibly there could be no successful constitutional objection to-the legislature’s delegating such power to a single individual. State ex rel. Herron v. Smith, 44 Ohio St. 84.8: And while such construction of a statute should be sought as would bring it into harmony with the general course ‘and-apparent'policy of state legislation in allied matters, yet the purpose and intent of the legislature, when clear and manifest and not forbidden by the constitution, must be given effect by the courts, even should it seem a departure from prior policies.
The statutory provisions respecting the veto power of the mayor are not as guarded and thoughtful as might be wished, since their phraseology has been borrowed from federal and state constitutions without such careful adaptation to the difference in' the conditions involved as would be desirable; but we must nevertheless see what has been provided. Section 1667, Rev. Slat., reads as follows:
“1667. The mayor, if he approves such ordinance, res *478 olution, order or contract, shall sign it; but if he does not approve it, he shall,return it with his objections to the board in which it originated, within ten days thereafter, or, if such board is not in session, at its next meeting thereafter, which objections the board shall cause to be entered in full on its journal, provided, that the mayor may approve the whole, or any item, or part of any such ordinance, resolution, order or contract presented to him for his signature; and if he does not return the same within the time above limited, it shall take effect in the same manner as if he bad signed it.”
Section 1()C8 provides what shall be done by the mayor upon his veto of an ordinance or any part of it.
It seems to be conceded by counsel for plaintiff that if the vetoed sections were parts of the ordinance separable from the residue, such as items of appropriation and the like, the mayor might veto them separately and approve the rest of the ordinance, and it would stand without further action of the council. The effect of such a partial disapproval must depend upon the power of the mayor to declare such a veto; or, manifestly, it would be idle to grant him the power to veto a part separately, if the effect of its exercise must be a disapproval of the whole and to require further action of the council to give life to that part of the measure which ho has approved.
If, then, he mayor have power to veto a fairly separable part of an ordinance, and no such parts as are of the essence of the measure, we think he might well have vetoed the sections seven and eight in question. They are of general application, while the body of the ordinance is a grant upon certain conditions, to a specific company, and they are in no wise necessary to it, and would undoubtedly infringe constitutional rights, and be invalid. But we think from the language employed the conclusion is inescapable that the legislature intended to confer upon the mayor a very broad discretion in using his partial veto, since it has provided that the “mayor may approve the whole, or any item, or part of-any such ordinance, resolution, order or contract presented *479 to him for his signature.” If the exercise of this power should in any particular case result in giving effect to provisions in an ordinance or contract without the modifications provided by the boards of the common council, it might be unsatisfactory; but, as we have said, there seems to be no, insuperable constitutional objection to it, and such a contract would still be subject to such defenses as to want of consider-' ation, etc.,as apply to contracts generally, and such other ordinance would still remain to be tested by the rules as to reasonableness, etc., that ordinarily determine the validity of ordinances.
Baker, Smith & Baker and Pratt & Wilson, for plaintiff.
John F. Kumler, Orville S. Brmnback and Frank H. Hurd, for defendants. . . .
Holding the ordinances of 1890 to be valid, how should they affect the judgment to be entered in this case? Ordinarily the rights of parties are to be determined with reference to the facts existing at the time of commencing the action, and assignments and changes of title and situation during the litigation are not noticed; but where the rights of the plaintiff have been during the pendency of his petition essentially modified or extinguished, and the facts which exhibit this are set up in supplemental pleadings, as is clearly authorized by the code, (sec. 5119), so that a judgment continuing in its nature would not be justly applicable to the situation of the parties when rendered, such judgment ought not to be entered; but, in assessing costs, respect should be had to the rights of the parties as they stood at the commencement of the action.
The injunction prayed for in the petition and amended petition will be refused,and judgment for defendant.will be entered in respect thereto.
The costs, up to the filing of the supplemental'answer, are adjudged against the defendant, The Toledo Electric Street Railway Company; the costs since that time, are adjudged against the plaintiff.